IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., Blake Percival., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) CIVIL ACTION NO. 2:11-CV-527-WKW ) |
| U.S. INVESTIGATIONS SERVICES, LLC | ) ) FILED IN CAMERA ) AND UNDER SEAL ) ) (TRIAL BY JURY DEMANDED) ) |
| Defendant. | ) ) |

## QUI TAM COMPLAINT

COME NOW Blake Percival, Relator, by and through undersigned counsel, before this Honorable Court on behalf of himself and the United States of America, its departments and agencies, and bring this action against Defendants U.S. Investigations Services, LLC, a subsidiary of Altegrity, Inc., for money damages and civil penalties arising out of Defendant's violations of the False Claims Act, 31 U.S.C. § 3729, which violations are described hereinafter with particularity.

### JURISDICTION AND VENUE

1. Jurisdiction is conferred pursuant to the False Claims Act, 31 U.S.C.A. §§ 3730(b)(1) and 3732 in as much as this action seeks remedies on behalf of the United States for violations of 31 U.S.C.A. § 3729 by Defendant.

2. Venue is proper pursuant to 31 U.S.C.A §3732(a) in that Defendant USIS

is a Limited Liability Company that transacts business within this judicial district.

## PARTIES

3. Relator Blake Percival acting on behalf of the United States, brings this civil action under the Qui Tam provisions of the False Claims Act, as amended in 1986.

4. Relator Blake Percival is a citizen of the United States and a resident of the State of Alabama.

5. Defendant U.S. Investigations Services, LLC (hereinafter "USIS") is a limited liability company organized pursuant to the laws of the State of Delaware with its principal place of business in Falls Church, Virginia.

## BACKGROUND

6. Relator Blake Percival started working for USIS in 2001 as a Field Investigator in Montgomery, AL.

7. In July of 2005, Percival became Team Leader for the Montgomery, AL area.

8. In January of 2007, Percival was promoted to Workload Leader for the Birmingham District. This district encompasses the vast majority of the state of Alabama.

9. Subsequently, Percival was promoted to Director of Fieldwork Services in January of 2011.

10. USIS's main client is the United States Office of Personnel Management or "OPM." OPM is headquartered in Washington, D.C.

11. Pursuant to applicable contractual standards and specifications and the standard operating procedures required by their Government contracts, Defendant USIS is required to conduct background investigations of all applicants or "Subjects" for

2

federal positions.

12.     OPM receives requests from governmental agencies to do investigations on Subjects applying for jobs with those agencies. OPM then sends the information about the applicants to USIS to carry out those investigations.

13.     USIS has extensive reach across the United States with 2,600 federally approved Field Investigators that work in all 50 states, primarily from their respective homes.

14.     USIS opens a "Case" on every Subject assigned to them by OPM that needs a background check. Cases may consist of one or more Report(s) of Investigation (ROI), which must be individually completed by an assigned Field Investigator.

15.     The number of investigations and Field Investigators involved will depend on the number of locations that the applicant has lived in collectively over a five year span and on the nature and scope of investigation required.

16.     For example, if a Subject lived in Montgomery, Alabama for 10 years, Mobile for 5 years and Birmingham for 7 years, a USIS Field Investigator from each location (Montgomery, Mobile, and Birmingham) investigates the Subject's background for the corresponding time period that the Subject lived in that location. All of the ROIs done by each Field Investigator for a given Subject combine to make the Case for that Subject.

17.     The ROIs, consists of an interview of the Subject and people that know him, a criminal record check, and an investigation of any area in which the Subject has lived.

18. In accordance with USIS's contract with the government, the Field Investigators are required to carry out complete and adequate investigations.

19. The Investigators upload the completed ROIs into OPM's Windows based computer system called PIPSR where the information is re-coded by PIPSR to OPM's DOS based computer system called PIPS.

20. PIPS then holds the ROIs in the system until an USIS employee titled a Workload Leader uploads the ROIs to a USIS computer program called DART, which compiles all ROIs on a particular Subject into that person's Case to be reviewed by a Reviewer.

21. Every Case compiled by USIS on a Subject must receive a quality review by a Reviewer and said review must be "Completed or Field Finished" by a specific date. Once the Case, with all of its ROIs, is deemed "Field Finished" or "Complete," it is then submitted to OPM.

22. USIS submits them to OPM for the compensation of approximately $1,900 per report submitted before the next-to-last day of the month and only 75% of that amount per report for all reports submitted after the next-to-last day of the month.

23. The completion and submission dates established for each ROI and Case is set by the Director of Master Schedule Production Control (MSPC), Ed Hahn.

24. Ed Hahn's office and MSPC headquarters are located in Atlanta, Georgia. Hahn and MSPC assign all deadlines for both the Field Investigators and Reviewers. Hahn and MSPC also designed and maintain a software program in Atlanta, Georgia called Blue Zone that plays an essential role in providing Completed Cases to OPM.

25. USIS also uses the Blue Zone program to assist DART in the removal of the Cases from PIPS. Blue Zone removes and "scrapes" the information in the ROIs within each Case and highlights certain key terms and codes to assist Reviewers in spotting that pertinent information.

## FACTS

26. On or about January 9, 2011, Blake Percival was promoted to the position of Director of Fieldwork Services, a position that oversees the work of 350 Reviewers, who review all the ROIs of each case for completeness and thoroughness before submitting them to OPM.

27. In January of 2011, at the Field Investigation Services Department, Percival met with the subordinates who managed the Reviewers.

28. Each of the managers told Percival that his predecessor, David Drews engaged in a practice referred to as "Dumping."

29. Dumping is the releasing of Cases to OPM that were represented as Field Finished that were not reviewed by a Reviewer and/or had not been investigated at all.

30. Dumping is a process spearheaded by Robert Calamia, Vice President of Field Operations at USIS, and Ed Hahn, the Director of MSPC at USIS. At the direction of Calamia, Hahn sets the investigative schedules that inform Field Investigators what day of the month their ROI's are to be submitted for review via PIPSR.

31. From January 2010 to January 2011, throughout its U.S. operations, Hahn adjusted the production deadlines for the Field Investigators, pushing the deadlines forward, and requiring Field Investigators to submit a large number of ROIs in a short amount of time in order to meet the revenue goals that Hahn had forecasted.

5

32. From January 2010 to January 2011, throughout its U.S. operations, the Field Investigators were forced to submit large numbers of ROI's in order to meet the deadlines. The numbers of ROIs due were so large that Field Investigators failed to thoroughly investigate each of their files before submitting them. This led to Field Investigators turning in ROIs that were inaccurate.

33. At the end of every month in the year 2010, throughout its U.S. operations, however, due to the large amount of ROIs being sent in by the Field Investigators, Calamia and Drews dumped the Cases in order to release them to OPM before the next-to-last day of each month.

34. From January 2010 to January 2011, throughout its U.S. operations, Dumping was accomplished through the use of the Blue Zone program. Despite the programs alleged intended use, Ed Hahn revealed that the program could be used to quickly assign Reviewer numbers to the numerous files so they could be passed off to OPM as having been reviewed.

35. From January 2010 to January 2011, throughout its U.S. Operations, Drews engaged in dumping with complete disregard for whether or not the ROIs submitted were the result of a proper investigation. Further, no review of the ROIs by a USIS Reviewer ever occurred during the dumping process.

36. The forgoing actions violated the contract between USIS and OPM because they caused the Field Investigators to perform incomplete and inaccurate investigations, and USIS knowingly submitted Cases to OPM for payment that they knew had not been reviewed by a USIS Reviewer as required by the contract.

37. In addition, USIS's actions violated the contract between USIS and OPM

because USIS used Blue Zone software in a manner specifically prohibited by the government agreement. Although the government allowed USIS to use Blue Zone to scrape information, Blue Zone was not to be used as a substitute for a human Reviewer.

38.     This made USIS's use of Blue Zone fraudulent in nature as it is being used to deceive OPM into the belief that they are receiving quality reviews of the ROIs in each Case for every subject.

39.     On or about February 11, 2011, Percival was contacted by Calamia from Calamia's office in El Paso, TX, who told Percival to dump the Cases assigned by DART for that month so that USIS could collect full compensation on the contract for February 2011.

40.     Rather than comply with Calamia's instructions, Percival encouraged the Reviewers to work later in order to meet revenue goals so as to avoid dumping.

41.     At or around the end of February 2011, Percival's reviewers were still unable to complete the reviews of all Cases for the month of February 2011.

42.     As a result, USIS did not receive maximum compensation for the cases that were not Field Finished by the second-to-last day of February 2011.

43.     In March 2011, Percival was again contacted by Calamia from Calamia's office in El Paso and directed to dump the files that were assigned by DART for March 2011.

44.     In March 2011, throughout its U.S. operations, Percival refused to dump and once again encouraged the Reviewers to work late to meet revenue goals. However Percival's department was unable to submit all of the Cases as Field Finished before the second-to-last day of March 2011 causing USIS to miss receiving its maximum profits.

45. On or about April 14, 2011, the management staff gathered together for the USIS Third Quarter meeting; Percival was approached by Calamia who ordered him to consult with Drews to learn how to dump.

46. From April 2011 to May 2011, Percival made no effort to meet with Drews to learn how to dump nor did Percival at any time engage in the practice of dumping.

47. On or about June 3, 2011, Percival's employment was terminated as a result of his refusing to order the dumping of Cases to OPM that were not field finished.

48. The dumpings of each case constituted false claims submitted to the government for payment by USIS. The dumpings described herein (i.e. the submitted false claims) for the period of January 2010 through January 2011, alone, constitute multimillion dollar payments by the United States Government to USIS.

## COUNT I
### (Failure to Review)

**Violation of the False Claims Act, 31 U.S.C. § 3729(a) (1) (A)**

49. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

50. Defendant USIS was contractually obligated to review each case compiled of ROIs, that were Completed or Field Finished and released to the government.

51. However, Defendant USIS by and through its officers, agents, and employees, engaged in the dumping of cases during the time frame above and/or during the statute of limitations applicable to this claim, and failed to review cases that were submitted to the government for payment.

52. By reason of the violation of 31 U.S.C. § 3729 (a) (1) (A), Defendant has

knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relator, on behalf of himself and the United Sates Government, prays:

(a) That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $5,000-$10,000 for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(b) That the Relator be awarded all costs incurred, including reasonable attorney's fees;

(c) That in the event that the United States Government proceeds with this action, the Relator be awarded an amount for bringing this action of at least 15%, but not more than 25%, of the proceeds of the action or settlement of the claims;

(d) That in the event that the United States Government does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(e) That the Relator be awarded prejudgment interest;

(f) That a trial by jury be held on all issues;

(g) That the United States Government and the Relator receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT II
### (Inadequate Investigation)

**Violation of the False Claims Act, 31 U.S.C. 3729(a) (1) (A)**

53. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

54. Defendant USIS was contractually obligated to conduct a complete and adequate investigation of each ROI before submitting them to Reviewers.

55. In order to meet revenue goals, however, Defendant greatly accelerated the dates by which the ROIs were to be turned in to the Reviewers.

56. Defendant, by and through their officers, agents, and/or employees, failed to provide accurate and complete investigations prior to Cases being submitted to the government.

57. By reason of the violation of 31 U.S.C. § 3729 (a) (1) (A), Defendant has knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relator, on behalf of himself and the United Sates Government, prays:

(h) That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a

civil penalty of $5,000-$10,000 for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(i) That the Relator be awarded all costs incurred, including reasonable attorney's fees;

(j) That in the event that the United States Government proceeds with this action, the Relator be awarded an amount for bringing this action of at least 15%, but not more than 25%, of the proceeds of the action or settlement of the claims;

(k) That in the event that the United States Government does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(l) That the Relator be awarded prejudgment interest;

(m) That a trial by jury be held on all issues;

(n) That the United States Government and the Relator receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT III
### (False Record/False Statement)

**Violation of the False Claims Act, 31 U.S.C.A. § 3729(a) (1) (B)**

58.     Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

59.     Defendant represented to OPM that the use of the Blue Zone software would be limited to scraping information out of PIPS for the Reviewers.

60.     Defendant USIS knowingly made, used, or caused to be made or used, a false record or statement material to a fraudulent claim given Blue Zone was not only used to scrape info, but was also used to submit Cases to OPM under the false pretense that the Cases had been complete and accurately and properly reviewed prior to submission to the United States Government.

61.     By reason of the violation of 31 U.S.C. § 3729 (a) (1) (B), Defendant has knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relator, on behalf of himself and the United Sates Government, prays:

> (o)     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $5,000-$10,000 for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(p) That the Relator be awarded all costs incurred, including reasonable attorney's fees;

(q) That in the event that the United States Government proceeds with this action, the Relator be awarded an amount for bringing this action of at least 15%, but not more than 25%, of the proceeds of the action or settlement of the claims;

(r) That in the event that the United States Government does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(s) That the Relator be awarded prejudgment interest;

(t) That a trial by jury be held on all issues;

(u) That the United States Government and the Relator receive all, both at law and at equity, to which they may reasonably be entitled.

**COUNT IV**
**(Retaliation)**

**Violation of the False Claims Act, 31 U.S.C.A. § 3730 (h)**

62. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

63. Relator Percival was discharged, harassed and/or discriminated against in his termination by Defendant USIS, by and through its officers, agents, and employees because of lawful acts done by Relator Percival on behalf of USIS and/or in the

furtherance of an action under the False Claims Act including, but not limited to, Relator Percival's efforts to stop violations of the False Claims Act.

64. By reason of the violation of 31 U.S.C. § 3730 (h), Defendant has knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relator prays for the following relief:

(a) That the Relator be awarded all compensatory and punitive damages, including personal injury damages for mental anguish, pain and suffering and/or loss of reputation, to which he is entitled pursuant to 31 U.S.C. §3730(h) and other applicable law;

(b) That the Relator be awarded all litigation costs and reasonable attorney's fees incurred as provided pursuant to 31 U.S.C. §3730(h) and other applicable law;

(c) That Relator receives all relief, both at law and at equity, to which he may reasonably be entitled.

Respectfully submitted,

/s/ Jere L. Beasley
JERE L. BEASLEY (BEA020)

/s/ Dee Miles
W. DANIEL "DEE" MILES, III (MIL060)

/s/ Larry A. Golston
LARRY A. GOLSTON (GOL029)
Attorneys for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 FAX

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

*[Signature]*

Of Counsel

**FILED IN CAMERA AND UNDER SEAL**
**DO NOT SERVE DEFENDANT**